# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

```
WALSH CONSTRUCTION CO.,      )
                             )
        Plaintiff,           )
                             )
    vs.                      )    No. 2:14-CV-084
                             )
CHICAGO EXPLOSIVE            )
SERVICES, LLC, and           )
PMG INDUSTRIAL, LLC,         )
                             )
                             )
        Defendants.          )
```

## OPINION AND ORDER

This matter is before the Court on Defendant Chicago Explosive Services, LLC's Motion to Dismiss Count II and III of Plaintiff's Complaint, filed by Defendant, Chicago Explosive Services, LLC, on June 11, 2014 (DE #13). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Plaintiff, Walsh Construction Company ("Walsh"), filed its Complaint on March 17, 2014. (DE #1.) The Complaint lists the following claims: Count I, Breach of Contract against Chicago Explosive Services, LLC ("CES"); Count II, Breach of Contract for Failure to Indemnify against CES; Count III, Breach of Contract for Failure to Properly Procure Insurance against CES; Count IV,

Negligence against CES; Count V, Negligence against PMG Industrial, LLC ("PMG"); Count VI, Strict Liability against CES; and Count VII, Strict Liability against PMG. (DE #1.) CES filed a Motion for Enlargement of Time in which to Answer or Otherwise Respond to Complaint on May 30, 2014. (DE #11.) CES then filed its Answer to Complaint and Motion to Dismiss Count II and III of Plaintiff's Complaint on June 11, 2014. (DE's #13 & #15.) Walsh filed its response on June 25, 2014. (DE #17.) CES filed its reply on June 30, 2014. (DE #18.) The motion is thus ripe for adjudication.

DISCUSSION

*Facts*

Walsh, an Illinois corporation, was hired by the Indiana Department of Transportation ("INDOT") pursuant to INDOT Contract IB-30997-A to demolish the Cline Avenue Bridge ("Bridge") in East Chicago, Indiana. (Comp. ¶¶ 1, 8-9.) Walsh retained CES, an Indiana limited liability company, pursuant to a subcontract agreement ("Subcontract") to perform certain "blasting" tasks associated with the Bridge demolition. (*Id*. at ¶¶ 2, 8-10; see also Subcontract, DE #1-1.) According to the Subcontract, the scope of CES's work was to include blasting of Spans 12 and 14 of the Bridge, and it required that the "[b]lasting be performed such that Span 12 falls away from the Indiana Harbor Canal on the

2

landward side of Pier 13 and Span 14 falls away from the Indiana Harbor Canal on the landward side of Pier 14." (Comp. ¶¶ 9-10; see also Subcontract, DE #1-1, pp. 2-3.) Several documents, labeled as exhibits A through M, were attached to and expressly incorporated into the Subcontract. (see list of documents at Subcontract, DE #1-1, p. 1.) Exhibit A of the Subcontract delineates the relevant Terms and Conditions and includes an indemnification provision as follows:

> Article 9 – Indemnification
> 9.1 Indemnification. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and save harmless Owner, Owner's Representative, Architect/Engineer, Contractor, and Contractor's surety, as well as any individual and/or entity that Contractor is required by contract to indemnify, defend and/or hold harmless, and their partners, insurers, parents, members, subsidiaries, related corporations officers, directors, agents and employees, and each of them, (hereafter collectively "Indemnified Parties" and individually "Indemnified Party") from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, judgments, fines, penalties, interest, actual attorney's fees, costs and expenses of whatever kind or nature (hereafter "Indemnified Claims") and whether they may arise before, during or after performance of Subcontractor's Work which are in any manner directly or indirectly caused, occasioned or contributed to, in whole or in part, or claimed to be caused, occasioned, or contributed to, in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor,

or anyone acting under its direction, control, or on its behalf or for which it is legally responsible, in connection with or incident to the Subcontractor's Work or arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract: without limiting the generality of the foregoing, the same shall include injury or death to any person or persons (including Subcontractor's employees) and damage to any property, regardless of where located, including the property of Owner and Contractor. Subcontractor's obligation to provide a defense for an Indemnified Party shall arise regardless of the merits of the matter and shall continue until a final determination of fault is made. Subcontractor's obligation to Indemnify, defend and hold harmless an Indemnified Party shall apply regardless of any allegations of active and/or passive negligent acts or omissions of an Indemnified Party. Subcontractor, however, shall be relieved of and shall have no further obligation to Indemnify an Indemnified Party under the Subcontract Documents upon a final determination, to the extent that an Indemnified Claim is due to the negligence or willful misconduct of that Indemnified Party or such Party's agents or employees. Contractor shall be entitled to recover actual attorney fees and court costs and all other costs, expenses and liabilities incurred by Contractor in an action brought to enforce all or any part of this Article 9. Subcontractor's obligations described in this paragraph shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

(Subcontract, DE #1-1, pp. 10-11.) Exhibit B of the Subcontract describes the "Scope, Clarification, Alternates, and Unit Prices" of the agreement. (*Id*. at pp. 2-3.) As part of those terms, CES

4

agreed to obtain $2,000,000 in insurance coverage naming Walsh as an insured and consisting of a combination of Commercial General Liability ("CGL") and Excess coverage, plus CES agreed to purchase an additional $5,000,000 blasting insurance policy for its work related to the Subcontract. (Comp. ¶¶ 12-13; Subcontract, DE #1-1, pp. 2-3 & 15-16.) In Inclusion 18, the parties agreed that:

> Chicago Explosive Services will provide a $5 million blasting insurance policy, in addition to the requirements listed in Exhibit D of this agreement. A claim will be made against this blasting insurance policy for any costs Walsh Construction incurs that results from Chicago Explosives Service's non-conformance to the scope of work as outline in inclusions 24 and 25.

(Subcontract, DE #1-1, pp. 2.) The language of Inclusion 24 states that "[CES] will provide a skyjack forklift capable of reach (sic) 45 ft." (*Id.*) The language of Inclusion 25 states the scope of work as follows:

> Segment 1 Scope of Work includes:
> a.  Blasting of Segment 1 Including Spans 2-6
> b.  Drilling and Blasting of Piers 3-7
> c.  Blasting of Pier 7 Additional Structural Steel Support
> d.  Blasting method must prevent damage to Pier 2 substructure and footing.

(*Id.*) The language of Inclusion 26 also describes the scope of work and provides:

> Segment 3 Scope of Work Includes:
> a.  Blasting of Spans 12 & 14

5

>    b.  Blasting of Span 12 will include Pier 12, Pier 13 and shoring tower in Span 12.
>    c.  Blasting of Span 14 will include Pier 14, Pier 15 and shoring tower in Span 14.
>    d.  Blasting to be performed such that Span 12 falls away from the Indiana Harbor Canal on the landward side of Pier 13 and Span 14 falls away form the Indiana Harbor Canal on the landward side of Pier 14.
>    e.  Blasting will include H-Piles set in Pier 13 and Pier 14 columns.
>    f.  Blasting method must prevent damage to Pier 13 and Pier 14 crash-walls.

(*Id*. at pp. 2-3.)

CES was assisted by PMG in completion of the blasting work on Spans 12 and 14. (Comp. ¶ 15.) When Span 12 was improperly and negligently blasted by CES and PMG, the Bridge did not fall away from the Indiana Harbor canal onto the landward side; instead, it fell into the canal and severely damaged the crash wall and sheet pile wall of Pier 13. (*Id*. at ¶¶ 16-17, Count II, ¶ 25.) Likewise, when Span 14 was improperly and negligently blasted by CES and PMG, the Bridge did not fall away from the Indiana Harbor Canal onto the landward side; instead it fell down into the canal and damaged the crash wall and sheet pile wall of Pier 14. (*Id*. at ¶ 18, Count II, ¶ 25.) Walsh, as the General Contractor for INDOT Contract IB-30997-A, was contractually obligated to repair the damage to the crash walls and sheet pile walls caused by the negligent actions of CES and PMG. (*Id*. at ¶

19, Count II ¶¶ 25-26.) Walsh completed such repairs and incurred expenses for labor, equipment, materials, and overhead totaling approximately $2,059,504.68. (*Id.* at ¶¶ 20-21.) Furthermore, as a result of the Bridge falling into the Indiana Harbor Canal, debris fell into the channel, which required the channel to be closed. (*Id.* at ¶ 22.) This closure affected the work schedule of other construction companies working in the area. (*Id.*) One such company, Kokosing Construction Company ("Kokosing"), filed a claim for $67,745.51 against Walsh for costs it incurred as a result of CES's negligent actions. (*Id.* at ¶¶ 22-23, Count II, ¶ 27.) Walsh tendered these claims to CES, but CES denied Walsh's tender. (*Id.* at Count II, ¶ 28.) Walsh ultimately incurred damages of approximately $2,127,250.19 in total and responded by filing the instant Complaint against CES and PMG on March 17, 2014, to recover these damages. (*Id.* at Count II, ¶ 30.)

### *Analysis*

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). A complaint is not required to contain detailed factual allegations; however, the plaintiff

must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not enough that there might be some conceivable set of facts that entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007). The plaintiff's obligation "requires more than labels and conclusions. . . ." *Id*. at 555. The Supreme Court has provided that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, a court generally considers only the factual allegations of the complaint and any reasonable inferences that can be drawn from those allegations; however, a court may also examine information from documents "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis,* 742 F.3d 720, 729 (7th Cir. 2014); *see Williamson v. Curran*, 714 F.3d 432, 443 (7th Cir. 2013) (noting the Seventh Circuit has taken "a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss."). Such exception is applicable in cases concerning contract interpretation. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). In those cases the contract itself is "considered part of the pleadings" as it is "central to [the plaintiff's] claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th

Cir. 1994). Here, Walsh's Complaint refers directly to the Subcontract, and that Subcontract expressly incorporates various exhibits, all of which may be considered by this Court in ruling on the motion to dismiss without converting it into a motion for summary judgment.

*Count II - Breach of Contract for Failure to Indemnify*

In Indiana, the essential elements of breach of contract are "the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). Indiana courts recognize and respect the freedom of parties to enter into contracts, and there is a presumption that those contracts are representative of the freely bargained for agreements of the parties. *SAMS Hotel Group, LLC. V. Environs, Inc.*, 716 F.3d 432, 435 (7th Cir. 2013). Parties are free to negotiate an indemnification clause that "may obligate one party to insure against and/or to indemnify certain acts or omissions of the other party." *Gaffney v. Riverboat Servs. Of Ind., Inc.*, 451 F.3d 424, 469 (7th Cir. 2006). The duty to indemnify, however, does not usually arise until the party seeking indemnity "suffers loss or incurs damage." *Essex Group, Inc. v. Nill*, 594 N.E.2d 503, 507 (Ind. Ct. App. 1992). This may occur when the party seeking indemnity pays an underlying claim, pays judgment on an

9

underlying claim, or tenders payment in settlement of an underlying claim. *Id.*

Here, CES argues that Walsh's Breach of Contract for Failure to Indemnify claim must fail because CES is not obligated to indemnify Walsh for Walsh's own negligence. CES states that the Complaint is unclear as to the nature of any alleged "claims" made against it by third parties such as INDOT and/or Kokosing, which leaves speculation as to whether Walsh is seeking indemnification for its own negligence or for that of CES. CES also argues that Walsh's "failure to elaborate" creates an issue as to whether CES's duty to indemnify Walsh has been triggered because Walsh has presented no facts showing that it has paid any underlying claim via judgment or settlement or that its liability based on the negligence of CES has become fixed. In response, Walsh states that the Complaint clearly alleges that CES must indemnify Walsh for CES's negligence (rather than for Walsh's own negligence) and that the damages at issue are identifiable as being caused by CES.

The Court finds that Count II of the Complaint adequately states a claim. Specifically, Walsh alleges the following: (1) that Walsh and CES entered into a Subcontract which included an indemnification provision; (2) that the indemnification provision provides that CES will indemnify Walsh for damages, claims, debts, and demands made against Walsh as a result of CES's

10

negligent acts or omissions; (3) that the Subcontract sets forth specific requirements related to the blasting actions performed by CES; (4) that CES and PMG improperly and negligently blasted certain Bridge spans defined in the Subcontract; (5) that, as a result of CES and PMG's improper and negligent blasting, crash walls and sheet pile walls were damaged; (6) that Walsh was contractually obligated to INDOT to repair the damage caused by the negligent actions of CES and PMG; (7) that INDOT demanded that the repairs be completed by Walsh; (8) that Kokosing also made a claim and demand on Walsh for damages sustained as a result of CES's negligence; (9) that Walsh tendered such claims to CES; (10) that CES denied Walsh's tender; and (11) that Walsh completed the required repairs and, in doing so, incurred expenses for labor, equipment, materials, and overhead totaling approximately $2,127,250.19. Taking these allegations as true and drawing all reasonable inferences in Walsh's favor as must be done at this point, the Complaint adequately alleges that CES breached the Subcontract by failing to indemnify Walsh for CES's negligence. To the extent that CES argues that no underlying claim has triggered operation of the indemnification clause because there are no facts in the Complaint showing that Walsh has paid any underlying claim, this argument is without merit. Again, giving Walsh the benefit of all reasonable inferences to which it is entitled at this stage, Walsh has adequately alleged

that damages occurred because of CES's negligence, that it was required by INDOT to repair the damage caused by CES, and that it *did* repair those damages, incurring significant costs for labor, equipment, materials, and overhead in the process. Walsh's allegations are sufficient to withstand Rule 12(b)(6) scrutiny. Thus, the motion to dismiss Count II is **DENIED**.

### *Count III - Breach of Contract for Failure to Properly Procure Insurance*

"Under Indiana law, the primary goal of contract interpretation is to give effect to the parties' intent." *Matter of Forum Grp.*, Inc., 82 F.3d 159, 163 (7th Cir. 1996). Terms of an agreement will usually be given their "plain and ordinary meaning" as written. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008). However, "[r]ules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations" when a contract's terms are ambiguous or uncertain. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010).

Here, CES argues that Count III of the Complaint fails to state a claim because the clear language of the Subcontract did not require CES to obtain an additional $5,000,000 blasting insurance policy for the specific work that is the subject of this dispute. CES points out that Inclusion 18 states that CES was to provide the additional blasting insurance policy "for any

costs Walsh . . . incurs that results from [CES's] non-conformance to the scope of work as outlined in inclusions 24 and 25." Inclusion 24 states that CES was to provide "a skyjack forklift capable of reaching 45 ft," and Inclusion 25 describes the scope of work related to blasting Spans 2-6 and Piers 3-7. Thus, according to CES, because the subject of the dispute relates to Piers 13 and 14 only, a claim by Walsh for breach of contract for CES's failure to obtain an additional blasting insurance policy fails on its face. CES states that Walsh specifically identified the piers requiring additional blasting insurance, which did not include Piers 13 and 14. In response, Walsh argues that, when reading the Subcontract as a whole, it is clear that the intent of the parties was to require an additional blasting insurance policy for the two inclusions related to blasting (Inclusions 25 and 26) and that the reference to the line item requiring CES to provide a forklift (Inclusion 24) was simply a typographical error. Walsh points out that there is no reasonable basis to assume the Subcontract would require a blasting policy for a provision related to a forklift rather than the blasting work CES was to perform, as such blasting work was central to the entire agreement.

After review of the Subcontract and relevant attached/incorporated exhibits, the Court finds that the contractual language is not as "clear and unambiguous" as CES

13

maintains.  Inclusion 18 states that CES was to provide an additional "$5 million *blasting* insurance policy" for its "non-conformance to the *scope of work* as outlined in inclusions 24 and 25" (emphasis added).  Inclusion 24 simply refers to forklift specifications, and it does not reference "scope of work" or blasting requirements at all.  Inclusions 25 and 26, however, are entitled "scope of work" and outline CES's obligations as related to their blasting work on the Bridge.  Giving Walsh the benefits to which it is entitled at this stage, it is reasonable to infer that a typographical error was made and that the intent of the parties was to reference Inclusions 25 and 26 in Inclusion 18 of Exhibit B of the Subcontract.  Inclusions 25 and 26 both refer to the "scope of work" for blasting, while no other numbered inclusions specifically use that phrase.  Inclusion 26 references Spans 12 and 14 (which were allegedly negligently blasted by CES) and Piers 13 and 14 (which were allegedly damaged by CES's negligent blasting), all of which relate to the subject of Walsh's Complaint.  Thus, the Court does not agree that Walsh has pled itself out of Court as CES argues, and CES's motion to dismiss Count III is **DENIED**.[1]

---

[1] In its reply, CES also belatedly argues that Walsh has not stated a claim for breach of contract in Count III because Walsh's Complaint does not allege that CES failed to secure and/or maintain the required $2,000,000 in CGL and Excess insurance coverage described in Exhibit D of the Subcontract.  This argument is without merit.  As Walsh points out, the Complaint states that the parties agreed CES would provide $2,000,000 in CGL and Excess coverage, that it would name Walsh as an additional insured under the policies, that Walsh tendered the claims to the insurers who failed to respond or provide Walsh with coverage, and that the Subcontract was thus breached as a result of CES's

CONCLUSION

For the aforementioned reasons, Defendant Chicago Explosive Services, LLC's Motion to Dismiss Count II and III of Plaintiff's Complaint, filed by Defendant, Chicago Explosive Services, LLC, on June 11, 2014 (DE #13), is **DENIED.**

**DATED: October 20, 2014**     **/s/ RUDY LOZANO, Judge**
                                **United States District Court**

---

failure to procure the required insurance.  (See Comp., Count III, ¶¶ 25-28.)