# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

WALSH CONSTRUCTION CO.,    )
                    )
       Plaintiff,     )
                    )
    vs.             )     No. 2:14-CV-084
                    )
CHICAGO EXPLOSIVE      )
SERVICES, LLC, and     )
PMG INDUSTRIAL, LLC,    )
                    )
       Defendants.    )

## OPINION AND ORDER

This matter is before the Court on Defendant Chicago Explosive Services, LLC's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction, filed by Defendant, Chicago Explosive Services, LLC, on May 27, 2016 (DE #66). For the reasons set forth below, the motion is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.


BACKGROUND

Plaintiff, Walsh Construction Company ("Walsh"), filed its Complaint on March 17, 2014. (DE #1.) The Complaint lists the following claims: Count I, Breach of Contract against Chicago Explosive Services, LLC ("CES"); Count II, Breach of Contract for Failure to Indemnify against CES; Count III, Breach of Contract for Failure to Properly Procure Insurance against CES; Count IV, Negligence against CES; Count V, Negligence against PMG

Industrial, LLC ("PMG"); Count VI, Strict Liability against CES; and Count VII, Strict Liability against PMG. (DE #1.) CES filed a Motion for Enlargement of Time in which to Answer or Otherwise Respond to Complaint on May 30, 2014. (DE #11.) CES then filed its Answer to Complaint along with a Motion to Dismiss Count II and III of Plaintiff's Complaint on June 11, 2014. (DE's #13 & #15.) The Court denied the Motion to Dismiss Count II and III of Plaintiff's Complaint on October 20, 2014. (DE #27.)[1]

A protracted discovery period ensued during which several requests for extensions of time related to discovery matters were granted. On May 27, 2016, the instant motion to dismiss was filed. (DE #66.) In response to the motion, Walsh requested an enlargement of time to respond so that it could conduct discovery on the issue raised in the motion to dismiss -- lack of subject matter jurisdiction. (DE #69.) On June 28, 2016, Magistrate Judge Paul R. Cherry ordered all discovery not related to subject matter jurisdiction stayed, and he vacated the discovery schedule providing new deadlines for specific, jurisdictionally based discovery matters. (DE #73.) On November 7, 2016, Walsh filed its response to the instant motion to dismiss. (DE #83.) CES

---

[1] The initial Motion to Dismiss Count II and III of Plaintiff's Complaint was premised upon Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and the Court decided it on those grounds.

filed its reply on November 18, 2016.  (DE #86.)  The motion is ripe for adjudication.


DISCUSSION

*Facts*

Walsh, an Illinois corporation with its principal place of business in the state of Illinois, was hired by the Indiana Department of Transportation ("INDOT") pursuant to INDOT Contract IB-30997-A to demolish the Cline Avenue Bridge ("Bridge") in East Chicago, Indiana.  (DE #1, pp. 1-2.)  Walsh retained CES, a limited liability company with its principal place of business in Indiana, pursuant to a subcontract agreement ("Subcontract") to perform certain "blasting" tasks associated with the Bridge demolition.  (*Id.; see also* Subcontract, DE #1-1.)  CES was assisted by PMG in completing the blasting work.  (DE #1, p. 3.) Walsh alleges that some of the blasting work was performed in an improper and negligent manner, which ultimately led to Walsh incurring significant monetary damages.  (*Id.* at 3-11.)  Walsh filed the instant Complaint bringing claims of breach of contract, negligence, and strict liability.  (*Id.*)  The Complaint alleges that jurisdiction is proper under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and because diversity exists between the parties.  *Id.* at 1-2.  Specifically, Walsh alleges

3

that it is a citizen of Illinois while, "[u]pon information and belief," CES and PMG are citizens of Indiana for purposes of diversity jurisdiction.[2] *Id.* at 1.

CES's Limited Liability Company Operating Agreement defines its initial members as Richard N. Flores, Patrick L. Carney, and Brant Flores. (DE #66-2.) It is not disputed that both Richard N. Flores and Brant Flores are citizens of Indiana as is alleged in the Complaint. However, during the course of discovery, it was discovered that Carney has never been a citizen of Indiana.[3] (DE #66-3, p. 2.) While the parties agree that Carney was never a citizen of Indiana, they dispute the actual state of his citizenship as of March 17, 2014, the date of the filing of the Complaint. The following is a summary of the evidence as provided by both parties.

In the "Declaration of Patrick L. Carney in Support of Defendant Chicago Explosive Services, LLC's Motion to Dismiss" (the "Declaration" or "Carney's Declaration"), Carney states that: (1) he maintained citizenship in Illinois at all relevant times; (2) he currently (as well as during previous relevant time periods)

---

2  It is undisputed that PMG is considered a citizen of the state of Indiana and that Walsh is considered a citizen of Illinois.

3  Carney initially advised counsel that he was not a member of CES during the relevant time period, but this was later determined to be false. (DE #66-3, p. 1; see also DE #66, p. 5, n. 1.)

maintains residency at 10343 South Oakley Street, Chicago, Illinois 60643 ("10343 Oakley Street"); (3) he maintains a Driver's License issued by the State of Illinois with an expiration date of August 12, 2016; (4) his Illinois and Federal tax returns identify his address as 10343 Oakley Street; (5) he maintains a vacation home at 1209 Varela Street, Key West, Florida 33040 ("1209 Varela Street"); and (6) he is not a citizen of Florida or Indiana. (DE #66-3.) CES has provided copies of Carney's 2013 and 2014 Illinois and Federal tax returns, which identify his address as 10343 Oakley Street (DE ##86-4 through 86-7), an Illinois Driver's License issued on August 18, 2012, that has an expiration date of August 12, 2016, and lists Carney's address as 10343 Oakley Street (DE #86-8), a certificate of an Illinois vehicle title dated June 9, 2008 (DE #86-9), and a money market account statement dated February 28, 2014, with an address of 10343 Oakley Street (DE #86-10). Carney also testified that he was a registered voter in the State of Illinois as of March 17, 2014, and that he voted in the Illinois primary as late as 2016. (DE #86-11, pp. 2-3.)

In 2010, Carney purchased the properties located at 1209 Varela Street and 1207 Varela Street in Key West, Florida. (DE #83-5, pp. 4-5.) When asked about the purpose of the property at his deposition on October 4, 2016 (the "Deposition"), Carney initially testified as follows:

Q:   And I understand these properties were initially purchased as a vacation home, correct?

A:   Correct.   One of the -- yeah, correct.

Q:   I mean, it it's not correct, then please feel free to correct me, because I don't want to put words in your mouth.

A:   It wasn't purchased for a vacation home.   I knew eventually I would move down here full time.   That's why I bought the house.   I didn't figure I'd come down two weeks out of the year, or anything like that.   I bought the house because of the change in business, obviously, getting out of the blasting business, the pits at the Board of Trade that you are familiar with -- well, probably, you know what I'm talking about.   Those are all going -- I was in the pit back in the day.   They are all pretty much – for 2007 you could see the handwriting on the walls, all going computerized; hence, there was really no reason for me to remain in Chicago.   So, it wasn't purchased just as an occasional – it was purchased as a final destination.

. . .

Q:   When you purchased it in 2010, approximately what percentage of the year did you spend in Key West?

. . .

A:   2010?   All total, probably maybe three months.[4]

---

[4]   In its response brief, Walsh states that Carney's "percentage of time spent living in the Florida home increased following completion of the project at issue in the Complaint, which concluded in 2013." (DE #83, p. 5.) However, several of the pages of the Deposition that Walsh cites to in support of that assertion have not been included in the record. (See *Id*. citing to pages 54, 55, 73, and 74 of the Deposition).   Of those pages, only page 54 of the Deposition was submitted to the Court with Exhibit 5.   (See DE #83-5, p. 6.)   The Court "need not credit [a party's] version of the facts when the materials supporting those asserted facts are not part of the record." *Stevens v. Hous. Auth. of S. Bend, Ind.*, 663 F.3d 300, 311 (7th Cir. 2011).   Nor is the Court required to hunt through the record to make a party's case for him.   See *Gross v. Town of Cicero, Ill*., 619 F.3d 697, 702-03 (7th Cir. 2010) (collecting cases).   Thus, any factual assertions that lack direct citation to easily identifiable support in the record will not be considered by the Court.

(*Id*. at 5-6.)  Later in that same Deposition, Carney expanded upon

his position when asked again about the property:

> Q:  Looking back at Exhibit 17, No. 7 states that, 'I
> maintain a vacation home at 1209 Varela Street, Key West,
> Florida, 33040'; that's what it states, right?
> A:  Yes.
> Q:  But we have already talked about today, and it is
> your position that that property is not -- was never a
> vacation home?
> A:  I didn't say that at all.  I said that it was a
> destination home eventually.  I mean, obviously when I
> first bought it it was for a vacation home.  And there
> is probably an overriding reason I bought it to begin
> with.  Has nothing to do with what we are talking about
> here at all.  So it is just a whole different reason
> that I purchased it as opposed to a vacation home.
> Q:  So, just so that I'm clear, the home at 1207 to 1209
> Varela Street as of May 19th 2016, was maintained as a
> vacation home, or it was not maintained as a vacation
> home?
> A:  There is two addresses there.
> MR. ANDERSON:  I'm going to object to relevance. The
> question is where he was a citizen at the time this
> complaint was filed.  So any questions about anything
> after that are totally irrelevant.  I have a standing
> objection to that.  You can answer.
> MR. CARNEY:[5]  And I think, you know, we haven't even
> defined what a vacation home is versus what he thinks
> vacation home means versus --
> THE WITNESS:  My idea of a vacation home may be totally
> different than yours.
> BY MS. GILBERT:
> Q:  Well, it's your affidavit.  So why don't you tell
> me in No. 7 the statement that, 'I maintain a vacation
> home at 1209 Varela Street, Key West, Florida, 33040,'
> what did you mean by that when you signed the affidavit?
> MR. CARNEY:  You can answer that.
> THE WITNESS:  (inaudible)
> THE COURT REPORTER:  I'm sorry?

---

5  The Court has some question as to who is speaking in this section of the
transcript, but for purposes of accuracy, the transcript has been quoted
verbatim.

THE WITNESS:  We will call it a vacation home then.

(DE #86-1, pp. 2-3.)

When asked at the Deposition whether he earned any income
from work performed in Florida between 2013 and 2014, Carney
testified as follows:

> THE WITNESS:  It's a tough question to answer, because
> it's -- it's -- it's -- it's -- if I'm trading, where
> does that money -- you know, if you are trading
> commodities, for example, you know, that all goes
> through Chicago, no matter where you are at.  So I don't
> know that you can call -- so I'm confused . . . .[6]

(DE #83-5, p. 11.)  Carney testified that he did have a personal
bank account with the First State Bank of the Florida Keys for the
period of February through June of 2014 but that he did not have
any business accounts at that bank in the beginning of 2014.  (*Id.*
at 3.)  Carney was also asked about additional business dealings
in Florida:

> Q:  What about in 2014?  As you sit here today, do you
> recall whether you were involved in any Florida business
> enterprises as a sole proprietorship, partnership,
> corporation, or LLC?

---

6  The rest of Carney's answer is not included in the record.  Walsh states
in its response brief that "[b]y the time of the filing of the Complaint,
[Carney] was engaging in business in Florida, including engaging in futures
trading from Florida through Skype, which is a combination of video and
telephone transmissions."  (DE #83, p. 5.)  Again, several of the pages of
the Deposition that Walsh cites to in support of that assertion have not been
included in the record.  (See *Id.* citing to pages 70 through 72 of the
Deposition.)  Of those pages, only page 70 was submitted to the Court with
Exhibit 5.  (See DE #83-5, p. 11.)  For the reasons set forth in footnote 4,
*supra*, the factual assertions lacking support will not be considered.

. . .

> THE WITNESS: There was a company, White Street Capital,
> that never got going. It was intended to be a
> partnership with me and another broker, and then he died.
> It was a partnership between they and another.
> THE COURT REPORTER: Did you say, 'Wash U'?
> MS. GILBERT: White Street Capital.
> THE WITNESS: I formed that as it was going to be a
> partnership, and then the thing blew up immediately, you
> know. And so it never was actually -- I don't think it
> actually was ever registered with the State of Florida.
> And you will see -- there is someplace around here you
> will see that White Street Capital. It's on the NFA
> form, I think, actually. You can take a look at that.

(DE #86-3, p. 2-3.) A document entitled Electronic Articles of

Organization for a Florida Limited Liability Company ("Articles of

Organization") was filed with the State of Florida on May 7, 2013,

for White Street Capital, LLC ("White Street Capital"). (DE #83-

6.) White Street Capital's street address and mailing address was

listed as 1207 Varela Street, Key West, Florida 33040 ("1207 Varela

Street"). (*Id.*) The Articles of Organization describe Carney as

a managing member and also as the registered agent of White Street

Capital, both with an address of 1207 Varela Street. (*Id.*) As

the registered agent, Carney agreed to "accept service of process"

for White Street Capital at 1207 Varela Street, and he also agreed

to "comply with the provisions of all statutes relating to the

proper and complete performance of [his] duties." (*Id.*) The

electronic signature of John Kiely, Carney's "old tax attorney,"

appears on that document. (*Id.; see also* DE #86-2, p. 2.) On

June 2, 2014, a Florida Limited Liability Company Annual Report ("Annual Report") was filed with the state listing Carney as the managing member and registered agent for White Street Capital with an address of 1207 Varela Street. (DE #83-6, p. 4.) Finally, on January 30, 2015, a separate Articles of Organization was filed for 923-931 Toppino Drive Associates, LLC ("TDA"). (DE #83-7.) The street address of TDA's principal office was listed as 1209 Varela Street, the mailing address was listed as 377 14th Street Ste. 2F, Brooklyn, New York 11215, and the registered agent was listed as White Street Capital at 1207 Varela Street with Carney's name at the registered agent signature line. (*Id*.) The document was electronically signed by TDA's managing member, Michael Robert Carney. (*Id*.) At the Deposition, Carney testified that, with the exception of White Street Capital, he was not a registered agent for any other Florida LLC between 2013 and 2014. (DE #83-5, p. 9.) He further testified that he did not recall White Street Capital acting as the registered agent for TDA in 2015 and 2016. (*Id*. at 9-11.)

## Standard

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In*

10

re *Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). Normally, at the motion to dismiss stage, a court must accept all of the plaintiff's well-pled factual allegations as true and draw all reasonable inferences derived from those allegations in the plaintiff's favor. *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *Id*. If a defendant proffers evidence calling the court's jurisdiction into question, the "presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue." *Sapperstein v. Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999). At that point, the plaintiff must establish the facts supporting federal jurisdiction by a preponderance of the evidence. *Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010); see also *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) (the party asserting that jurisdiction exists has the burden of establishing that the cause lies within the federal court's limited jurisdiction). Furthermore, the Seventh Circuit has noted that "a defect in subject-matter jurisdiction requires a suit's dismissal, no matter how much the parties have spent and no matter how late in the proceedings the defect comes to light."

*RTP LLC v. ORIX Real Est. Capital, Inc.*, 827 F.3d 689, 693 (7th Cir. 2016).

Under 28 U.S.C. § 1332(a)(1), a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between *citizens of different States*." (emphasis added). When a district court's jurisdiction is based on 28 U.S.C. § 1332, there must be complete diversity between the opposing parties. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). In other words, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). When the suit involves a limited liability company as a party, the court must look to the citizenship of each of its members to determine whether diversity exists. *Muscarello*, 610 F.3d at 424 (citing *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006)). Citizenship is contingent upon a party's domicile; an allegation of residence is not sufficient for purposes of establishing diversity jurisdiction. *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Domicile consists of two elements – (1) a physical presence in a state, and (2) an intent to remain there. *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996); see also *Sadat v. Mertes*, 615 F.2d 1176, 1181

(7th Cir. 1980) (citing Restatement (Second) of Conflict of Laws §§ 15, 16, 18 (1971)) ("To establish a domicile of choice a person generally must be physically present at the location and intend to make that place his home for the time at least."). Because intent is a state of mind, the court must evaluate it "through the circumstantial evidence of a person's manifested conduct," and declarations of intent are given little weight when they conflict with the facts. *Sadat*, 615 F.2d at 1181 (citations omitted). The Seventh Circuit Court of Appeals has recognized that picking one state to be a person's domicile can be difficult and even arbitrary in light of the fact that transportation is now so efficient and many individuals have second homes in different states. *Galva Foundry, Co. v. Heiden*, 924 F.2d 729, 730 (1991). In such cases, the court must evaluate the totality of the circumstances surrounding the jurisdictional issue, and no single factor decides citizenship. *Id.*; see also *Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp. 2d 924, 931–32 (N.D. Ill. 2009). Factors to be considered include:

> the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3612 (3d ed. 2017). Once a domicile is established, it continues until it is superseded by a new domicile. *Sadat*, 615 F.2d at 1181; Wright, Miller, & Cooper at § 3612 ("a domicile once established continues unless and until a new one is shown by clear and convincing evidence to have been acquired"). There is a presumption that an individual's old, established domicile is favored over a new one when there is a question between the two. See *24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, 08 CV 3853, 2008 WL 4671748, at *4 (N.D. Ill. Oct. 21, 2008) (collecting cases); see also Wright, Miller, & Cooper at § 3612 ("Another important and widely accepted presumption is that of favoring the continuation of an established domicile against an allegedly newly acquired one.").

As a rule, when the court's jurisdiction is premised on 28 U.S.C. § 1332, complete diversity must be established at the beginning of the action and subsequent events do not affect the court's diversity jurisdiction. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004); see also *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("[A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed.")

*Analysis*

Here, a consideration of all of the relevant factors establishes that Carney was a citizen of Illinois at the time the complaint was filed. The following facts are undisputed and supported by competent evidence as described above: (1) Carney maintained a residence in Illinois at 10343 Oakley Street on March 17, 2014, and that, as of the date of his Declaration in May of 2016, he still maintained a residence at that address; (2) Carney filed his 2013 and 2014 individual income tax returns with the State of Illinois and identified his address as 10343 Oakley Street; (3) Carney filed his 2013 and 2014 Federal individual income tax returns and identified his address as 10343 Oakley Street; (4) Carney maintained a valid Illinois Driver's License on March 17, 2014, that listed his address as 10343 Oakley Street and remained valid as of the date of his Declaration in May of 2016; (5) Carney's vehicle was titled with the State of Illinois; (6) Carney's money market account lists an address of 10343 Oakley Street as of February 28, 2014; and (6) Carney was a registered voter with the State of Illinois from at least 2013 through September of 2016, and he voted in the Illinois primary in 2016. These significant contacts with Illinois show that Carney was domiciled there because he maintained a physical presence in the state and intended to make that place his home, for the relevant

time at least.  See *Sadat*, 615 F.2d at 1181.

It is true that Carney also purchased property in Florida in 2010 and retained that property throughout the period in question; however, the Court finds that Walsh's characterization of Carney's Deposition testimony places more weight on that factor than is due.  A careful reading of the testimony as a whole shows that he purchased 1207 and 1209 Vaerla Street in 2010 as a vacation property to which he "eventually" intended to relocate to.  When asked whether it was his position that the property was never a vacation home, he emphatically denied that and clarified, "[I]t was a destination home eventually.  I mean, obviously when I first bought it it was for a vacation home.  And there is probably an overriding reason that I bought it to begin with.  Has nothing to do with what we are talking about here at all."  The fact that Carney owned a second home in Florida that he eventually intended to make his "final destination" does not replace his established domicile in Illinois with one in Florida unless Walsh can point to additional clear and convincing evidence that Carney had intended it to as of the date the complaint was filed.  *Sadat*, 615 F.2d at 1181; Wright, Miller, & Cooper at § 3612; see also *Galva*, 924 F.2d at 730 (desire to retire to his Florida vacation home eventually did not supersede the fact that the defendant intended to remain in Illinois for the foreseeable future).

Walsh argues that such evidence exists.  First, Walsh asserts that the percentage of time Carney spent living in the Florida home increased following completion of the project at issue in the Complaint, which concluded in 2013.  However, as noted above in footnote four, several of the pages that Walsh cites in support of that assertion have not been included in the record.  The testimony that *is* included in the record establishes only that Carney spent a total of approximately three months at the Florida residence in 2010; this does little to weigh in favor of a change in domicile.

Next, Walsh argues that Carney was "engaging in business" in Florida through futures trading via Skype at the time the Complaint was filed.  However, as described in footnote six, several pages cited by Walsh are again missing from the record.  The Deposition testimony that is provided shows that, when asked whether he earned any income from work performed in Florida between 2013 and 2014, Carney responded that it was a "tough question to answer" because all commodities trading eventually goes through Chicago.  Carney also testified that he had no business banking accounts in Florida at the beginning of 2014.[7]  The argument that Carney was domiciled

_____

7  Carney did testify that he had a personal bank account with the First State Bank of the Florida Keys for the period in question.  However, CES produced Carney's money market account statement dated February 28, 2014, that lists 10343 Oakley Street as Carney's address.  Because these pieces of evidence are of a similar vein, they tend to not shift the balance in either direction.

in Florida because he engaged in some kind of electronic trading there is not especially persuasive, and it becomes even less so when viewed in light of the undisputed fact that Carney actually filed his 2013 and 2014 individual income tax returns with the State of Illinois.

Finally, Walsh argues that Carney's ties to White Street Capital provide definitive proof of his domicile. Walsh points out that Carney's address on the Articles of Organization for White Street Capital is listed as 1207 Varela Street and that he affirmed through his electronic signature that he would comply with the provisions of all statutes relating to the proper performance of his duties as a registered agent. Walsh cites to the Florida Revised Limited Liability Company Act in which a registered agent is defined as "[a]n individual who resides in this state and whose business address is identical to the address of the registered office." § 605.0113(1)(b)(1) Fla. Stat. (2014). According to Walsh, because Carney affirmed via the Articles of Organization that he resided in the state, his status as the registered agent for White Street Capital is *prima facie* evidence that he was domiciled in Florida. As an initial matter, the Court notes that the case cited by Walsh for the proposition that a person's residence is *prima facie* evidence of his or her domicile is not

binding on this Court. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).[8] In the Seventh Circuit, while residence is certainly important to a determination of domicile that has been challenged, no single factor decides citizenship; rather, all relevant circumstances must be evaluated. See *Galva*, 924 F.2d at 730. In *Galva*, the defendant, who was sixty-eight years old at the time the suit was filed in 1989, had lived in Illinois his whole life. *Id*. In 1966, he purchased a second home in Florida that was continually used as a vacation home by him and his wife. *Id*. In 1988, the defendant registered to vote in Florida, took out a Florida Driver's license, declared permanent residency in Florida, and listed Florida as his permanent address on his State of Illinois and Federal tax returns. *Id*. In 1989, the defendant spent several months in Florida; however, he retained his home in Illinois and spent the balance of the year between there and Europe. *Id*. The court found that, despite the numerous affirmative steps that were taken with regard to establishing residency in Florida for tax purposes in 1988, his domicile was

---

8  Walsh also cites to *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 12 (1st Cir. 1991) for the proposition that representations on corporate reports are "weighty" in the domicile analysis; however, the Court notes that that opinion places equal weight on voting registration and voting behavior. *Lundquist*, 946 F.2d at 12. As noted above, Carney was registered to vote in Illinois as of the date the Complaint was filed and actually did vote in Illinois as recently as the 2016 primary. As such, this case does not help Walsh.

not converted.  *Id*. at 730-31.  The court recognized that a desire to retire to Florida eventually did not supersede the fact that he intended to remain in Illinois most of the year for the foreseeable future.  *Id*. at 730.  The court also acknowledged that even the defendant's (seemingly fraudulent) representations on official government documents were not dispositive in relation to determining his true domicile for diversity jurisdiction purposes. *Id*. at 730-31.[9]

Thus, although Walsh states that Carney "certified under oath"[10] via the Articles of Organization that he resided at 1207 Varela Street in 2013 and 2014, this affirmation is not *prima facie* evidence that he was domiciled in Florida.  Rather, the Court must look to the multitude of other factors surrounding the domicile issue to correctly determine Carney's citizenship.  Here, Carney testified that White Street Capital "never got going" and "blew up" quickly after the death of his other business partner.  While Walsh argues that the Annual Report filed on June 2, 2014, cuts

_____

9  Said another way by the Seventh Circuit Court of Appeals in an unpublished opinion, "[t]his is true even when it is criminal to misrepresent one's residency . . . because residency is determined differently in regard to voting or paying taxes or registering automobiles than is citizenship for the purposes of federal diversity jurisdiction."  *Mader v. Motorola, Inc.*, No. 98-3040, 175 F.3d 1020 (7th Cir. April 9, 1999).

10  The Court notes that the Articles of Organization are actually signed by John Kiely, Carney's old tax attorney, and that John Kiely was the individual to affirm that the "facts stated herein are true" and that false information submitted constituted a felony.  (See DE #83-6, p. 3.)

against Carney's assertion that White Street Capital was not really operating at the time the Complaint was filed on March 17, 2014, the most that can be gleaned from that document standing alone is that White Street Capital remained in existence as a limited liability company as of June 2, 2014, and that a certificate of continuing status was desired. The same is true of the fact that TDA listed White Street Capital as its registered agent in the Articles of Organization filed on January 30, 2015, and later in its Annual Report filed on March 3, 2016. These documents do little to establish that White Street Capital conducted any corporate/business activity or that Carney actually performed any actions as the registered agent for the company in Florida. Had Walsh provided additional evidence that White Street Capital was transacting business during 2013 and 2014 (i.e. financial reports, tax statements, etc.) or that Carney had performed duties as its registered agent (i.e. copies of certified letters, service of process notices, correspondence from state governmental entities, notice of lawsuits, etc.), the Court might be inclined to give more weight to White Street Capital as a factor pointing towards Carney's domicile being Florida. As it stands, the bulk of the evidence described above weighs in favor of Illinois citizenship. Walsh has failed to meet its burden of establishing, by a preponderance, that Carney had acquired a new domicile in Florida

as of the date the Complaint was filed. See *Muscarello*, 610 F.3d at 424; see also *Sadat*, 615 F.2d at 1181. Because Walsh is an Illinois corporation with its principal place of business in Illinois and Carney, a member of CES, is also a citizen of Illinois, the Court lacks jurisdiction over this diversity action, and the case must be dismissed without prejudice. See e.g. *Murray v. Conseco*, Inc., 467 F.3d 602, 605 (7th Cir. 2006) (A dismissal based on a lack of subject matter jurisdiction is not a decision on the merits, so the case must be dismissed without prejudice.).

CONCLUSION

For the aforementioned reasons, the Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction (DE #66) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

DATED: September 25, 2017        /s/ RUDY LOZANO, Judge
                                 United States District Court